UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| Anne C. Banes, D.D.S. P.L.L.C., Debtor. | ) ) ) ) ) | Case No. 06-81341-7 |

## ORDER AND OPINION

This matter came before the Court for hearing on November 2, 2006 upon the Bankruptcy Administrator's Motion for Appointment of a Patient Care Ombudsmen filed on October 24, 2006. At the hearing, William Yaeger appeared on behalf of the Debtor, Stephanie Osborne-Rodgers appeared as Attorney for the Chapter 7 Trustee, and Sarah Bruce appeared for the Bankruptcy Administrator. Based upon a review of the Motion and the evidence presented, this court makes the following findings of fact and conclusions of law:

Ann C. Banes, D.D.S., P.L.L.C. (the "Debtor") filed a petition under Chapter 7 of the Bankruptcy Code on October 17, 2006. The debtor is a dental practice. At the hearing, the Debtor's attorney revealed that the Debtor's practice is now defunct and the Debtor has no active patients. The Bankruptcy Administrator brought this motion to determine whether the Debtor's dental practice is a "health care business," as defined by 11 U.S.C. § 101(27A). If the Debtor is a health care business, this court would be required to appoint a patient care ombudsman within thirty days to monitor the quality of patient care and represent the interest of the Debtor's patients, unless the court found that such an appointment was not necessary under the specific facts of the case. 11 U.S.C. § 333.

Section 101(27A) provides that a "health care business" is:

(A) . . . any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for—
    (i) the diagnosis or treatment of injury, deformity, or disease; and
    (ii) surgical, drug treatment, psychiatric, or obstetric care; and
(B) includes–
    (i) any–
        (I) general or specialized hospital;
        (II) ancillary ambulatory, emergency, or surgical treatment facility;
        (III) hospice;
        (IV) home health agency; and
        (V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and
    (ii) any long-term care facility, including any—
        (I) skilled nursing facility;
        (II) intermediate care facility;
        (III) assisted living facility;
        (IV) home for the aged;
        (V) domiciliary care facility; and
        (VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V) if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

Because this is a new provision under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), there is a scarcity of authority addressing its meaning and application. After an examination of the statute, this court holds that a dental practice was not intended to be included within definition, and that even if it is included under the definition of health care business, a patient care ombudsman is not required under the facts of this case.

An inquiry into the meaning of "health care business" under § 101(27A) should start with the plain language of the definition. Statutes are construed according to their plain language unless there is apparent legislative intent to the contrary. *In re Abdul Muhaimin*, 343 B.R. 159, 167 (Bankr. D. Md. 2006) (quoting *Williams v. U.S. Merit Systems Protection Bd.*, 15. F.3d 46,

49 (4th Cir. 1994). Congress utilized the conjunctive "and" to connect all sections of §101(27A). The choice of the word "and" in statutory language should generally be given its ordinary conjunctive meaning. *See, e.g., In re Abdul Muhaimin*, 343 B.R. at 167; *Hillman v. Internal Revenue Service*, 263 F.3d 338, 342 (4th Cir. 2001). Two narrow exceptions to the plain meaning rule of the conjunctive "and" have been delineated. *Hillman*, 263 F.3d at 342. The first exception occurs when the application of the plain language of the statute produces a result that is "demonstrably at odds with clearly expressed congressional intent." *Id.*; *see also In re Abdul Muhaiman*, 343 B.R. at 167. The second exception applies when the plain language of the statute results in an absurd outcome that shocks the general moral or common sense. *Hillman*, 263 F.3d at 342. Here, the result of applying the conjunctive "and," as it is written in the plain language of the statute, would be to restrict the definition of health care business so that not every health care provider's bankruptcy would require the appointment of a health care ombudsman. There is no indication that Congress did not intend this result, nor is it an absurd outcome. Therefore, the conjunctive "and" must be read into the statute as it is plainly written.

Because every section of this statute is connected by the conjunctive, a health care business must meet the requirements of every subsection to require the appointment of an ombudsman. First, to be covered under § 101(27A)(A), a health care business must be primarily engaged in offering services to the public for the purposes of both "diagnosis or treatment of injury, deformity, or disease" under subsection (A)(i), and "surgical, drug treatment, psychiatric, or obstetric care" under subsection (A)(ii). A dental practice may meet the provisions of sections (A)(i) and (A)(ii) if it treats injury and disease and provides surgical treatment, and is generally accessible to members of the public seeking dental care. At the hearing, the Bankruptcy

Administrator represented that the Debtor is involved in a speciality that involves surgical treatment, which would likely bring it under the definition of § 101(27A)(A).

Subsection (B) is also connected to subsection (A) with the conjunctive "and," which means that the Debtor's dental practice must also fit within the categories of health care businesses described in § 101(27A)(B)(i)(I)-(V) or (B)(ii)(I)-(VI) to be considered a health care business. The only other court to analyze this statutory section described the type of health care businesses intended to fall under § 101(27A)(B) as those that involved "direct and ongoing contact with patients" that provided patients with "shelter and sustenance in addition to medical treatment." *In re 7-Hills Radiology, LLC*, ___ B.R. ___, 2006 WL 2706480, No. BK-S-06-11926-BAM, at *2 (Bankr. D. Nev. Aug. 31, 2006). As the *7-Hills* court explains, the word "includes" after subsection B indicates that health care business other than those listed may be brought under the umbrella of the definition. *Id*. at *3. However, the types of businesses listed are all of such a similar nature in that they provide both housing and treatment, *id.* at *2, that it is difficult to imagine that the legislature would have intended a business that is so fundamentally different, such as an outpatient dental practice, to be read into the definition. Based on the evidence presented at the hearing, the Debtor's dental practice does not provide patients with shelter and sustenance in addition to medical treatment, and is plainly not within the range of health care businesses anticipated by the statute.

Additionally, even if the Debtor's dental practice did provide direct and ongoing contact with patients that provided them with shelter and sustenance, the Debtor is no longer engaged in the practice of dentistry and thus would not require a patient care ombudsman. The plain language of the statute states that it applies to any entity that "is primarily engaged in offering"

4

health care services to the general public. § 101(27A). Congress chose to write this statutory definition in the present tense, indicating that it was concerned with appointing patient care ombudsmen in cases where health care businesses seeking bankruptcy protection are currently engaged in the ongoing care of patients.

This intent is supported by the enumerated duties of an ombudsman provided in 11 U.S.C. § 333(b), which provides that an ombudsman shall:

> (1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians;
> (2) report to the court, not less than 60 days from the date of appointment and not less frequently than at 60 day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the debtor; and
> (3) if such ombudsman determines that the quality of patient care provided to patients of the debtor is declining significantly or is otherwise being materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination.

These duties, which strongly indicate that the primary duties of an ombudsman are to monitor ongoing patient care, would not be necessary for a health care business that is no longer serving patients. Duties that arise when a health care business is ceasing operations, such as proper destruction or retention of patient records and attending to the costs of closing a health care business, are covered under §§ 351 and 503(b)(8) of the Bankruptcy Code, respectively, and allow the Trustee to carry out such functions. It does not appear, therefore, that Congress intended for § 101(27A) to apply to health care businesses that were not continuing to treat patients during the pendency of their bankruptcy cases. The Debtor has ceased patient care and is, by the assertion of its attorney, defunct, and therefore should not be classified as a health care business under § 101(27A), even if it were to meet the statutory definition of § 101(27A)(B).

Finally, even if the Debtor is a health care business under § 101(27A), Congress has granted the courts discretion in determining whether a particular health care business requires a patient care ombudsman. Under 11 U.S.C. § 333(a)(1), the court must appoint a patient care ombudsman "unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case." The Debtor here has ceased operations and dissolved its corporate identity under North Carolina law. Patient records have been made accessible to the Debtor's former patients, and those records that have not been reclaimed are being kept securely for the amount of time required under North Carolina law. Furthermore, the Debtor has contacted the proper North Carolina dental licensing authorities to take the appropriate measures to close her practice. Finally, the Debtor's estate has no assets with which to pay an ombudsman. Under § 330(a)(1)(A), an ombudsman appointed under § 333 is entitled to compensation, which this estate would be unable to provide. For all of the foregoing reasons, this court would hold that a patient care ombudsman is unnecessary if it were to find that the Debtor is a health care business under § 101(27A), which it has not.

For the foregoing reasons, this court finds that the Debtor is not a health care business under § 101(27A), and the Bankruptcy Administrator's Motion for Appointment of a Patient Care Ombudsman must be DENIED, and it is so ORDERED.

## SERVICE LIST

**ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER**